# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# TEXARKANA DIVISION

| | | |
|---|---|---|
| ROY ARTERBURY, INDIVIDUALLY, <br> DELWIN COBB, INDIVIDUALLY, <br> CAVINS CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> ODESSA SEPARATOR, INC., <br><br> Defendant. | §§§§§§§§§§§§ | CIVIL ACTION NO. 5:16-CV-00183 <br><br> JURY TRIAL DEMANDED |

## DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND BRIEF IN SUPPORT

        Jeffrey A. Tinker
        State Bar No. 24060733
        jtinker@bellnunnally.com
        Jeffrey S. Lowenstein
        State Bar No. 24007574
        jlowenstein@bellnunnally.com
        Brent A. Turman
        State Bar No. 24077506
        bturman@bellnunnally.com
        Saba F. Syed
        State Bar No. 24088497
        ssyed@bellnunnally.com

**BELL NUNNALLY & MARTIN LLP**
2323 Ross Ave., Suite 1900
Dallas, Texas 75201
Telephone: (214) 740-1400
Facsimile: (214) 740-1499

**ATTORNEYS FOR DEFENDANT
ODESSA SEPARATOR, INC.**

**TO THE HONORABLE JUDGE SCHROEDER:**

Defendant Odessa Separator, Inc. ("Defendant" or "OSI") files this Motion for Judgment as a Matter of Law pursuant to Rule 50 of the Federal Rules of Civil Procedure. In support of this motion, Defendant states as follows:

## SUMMARY AND BACKGROUND

Plaintiffs' sole claim against Defendant is for patent infringement of claims 1 (independent) and 8 (dependent) of the United States Patent No. 5,810,081 ("081 Patent"). After resting their case-in-chief, Plaintiffs have failed to proffer a legally sufficient evidentiary basis such that a reasonable jury would find that: (1) Plaintiffs can prevail on the claim for patent infringement of the '081 Patent; (2) Plaintiffs are entitled to lost profits; and (3) Cavins is an exclusive licensee of the '081 Patent.

## ARGUMENTS AND AUTHORITIES

**A.   A judgment as a matter of law is appropriate as to Plaintiffs' claim for patent infringement of the '081 Patent.**

A reasonable jury would not have a legally sufficient evidentiary basis to find infringement of claims 1 or 8 of the '081 Patent. FED. R. CIV. P. 50. "An infringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed ... The second step is comparing the properly construed claims to the device accused of infringing." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 512 U.S. 370 (1996). For literal infringement, "every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995). Any deviation from the literal claim language precludes a literal infringement finding. *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001).

Plaintiffs asserted literal infringement in this lawsuit, but have failed to establish that OSI's

Vortex Sand Shield contained every limitation set forth in Claim 1 and 8 of the '081 Patent.[1]

### a. There is no evidence of a "weakened wall portion" on the OSI Vortex Sand Shield.

Plaintiffs have failed to offer evidence that the OSI Vortex Sand Shield contained a "weakened wall portion" that was located on "said outer tubular member when exposed to relatively abrasive swirling solid particles for a prolonged period of time causing erosion of said weakened wall portion to reduce the thickness of said wall thereat," as required by the only independent claim being asserted by Plaintiffs. Def. Ex. 2, '081 4:48-54. In particular, the swirling solid particles only ever touch the inner wall of the "body" of the Vortex Sand Shield and never touch what Plaintiffs identify as the reduced wall portion—the "sleeve." Furthermore, there is annulus between the sleeve and the body, thus the sleeve cannot be considered as being part of the "outer tubular member"

### b. There is no evidence of a "means blocking fluid flow upwardly from said annulus.

The Court construed "means blocking fluid flow upwardly from said annulus" as follows:

Function: Blocking fluid from flowing upwardly from the annulus.

Corresponding Structure: Shoulder 26 of inner tubular member 22, outer wall of inner tubular member 22, and inner wall of outer tubular member 20, and equivalents.

Plaintiffs failed to offer any evidence of the existence of the identified structure in the alleged infringing device. In particular, the "shoulder" never abuts the inner wall of the outer tubular member. Rather, the "shoulder" only abuts the screen or other device that is coupled to the Vortex Sand Shield.

### c. There is no evidence of a "fluid inlet" on the OSI Vortex Sand Shield.

---

[1] Counsel for Plaintiffs Derek Gilliland announced in open court that Plaintiffs voluntarily dismissed Claim 4 during the trial proceedings on February 26, 2019.

**MOT. FOR JUDGMENT AS A MATTER OF LAW & BRIEF IN SUPPORT**                                        **PAGE 2**

Plaintiffs have further failed to offer evidence that the OSI Vortex Sand Shield contained "a fluid inlet passage in said outer tubular member extending to said annulus and restricting large solid particles from entering said annulus through said fluid inlet passage." Def. Ex. 2, '081 4:35-37.

To survive a motion for judgment as a matter of law, Plaintiffs were required to provide evidence in support of each of these claim elements. They failed to do so. Accordingly, Plaintiffs patent infringement claim for the '081 Patent fails as a matter of law.

### B.    Plaintiffs are not entitled to recover lost profits.

A reasonable jury would not have a legally sufficient evidentiary basis to find Plaintiffs establish lost profits. FED. R. CIV. P. 50(a). Specifically, Plaintiffs' damages expert relied on Mr. Arterbury's lay opinion on Cavins' production costs and also on improper data and analysis for lost sales. Plaintiffs failed to prove that Cavins was entitled to a 1:1 correlation of lost sales and, in fact, Mr. Arterbury testified that it would be improper to assume a 1:1 correlation. Additionally and alternatively, Plaintiffs have failed to meet the *Panduit* factors for lost profits. The *Panduit* test requires the patentee to show: (1) "demand for the patented product"; (2) "absence of acceptable noninfringing substitutes"; (3) "manufacturing and marketing capability to exploit the demand"; and (4) "the amount of profit that ... would have [been] made." *Georgetown Rail Equipment Company v. Holland L.P.*, 867 F.3d 1229, 1241 (Fed. Cir. 2017) (quoting *Panduit Corp. v. Stahlin Brothers Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978)). The following are independent reasons why Plaintiffs are not entitled to lost profits.

#### a.    There is no evidence Cavins would have made 100% of the sales that OSI made of the alleged infringing product.

This is not an argument regarding the *weight of* evidence. Plaintiffs claimed that, in the absence of OSI's Vortex Sand Shield in the market, they would have obtained 100% of the sales

that OSI made of the infringing products (and all other items on the same invoice) between January 2015 and February 2017.  Mr. Arterbury, the owner of Cavins, admitted that there were competitors in the industry, such as Spirit, that could have sold its non-infringing vortex desander, had OSI not been in the market.  Also, Mr. Arterbury admitted that he would have had to call OSI to provide several of the items on those invoices that are unique to OSI.

Further, because Plaintiffs failed to provide any evidence they would have made every sale, they were required to either establish which sales they would have made on a transactional basis or its market share.  Dr. House assumed Cavins would have obtained every sale, despite Mr. Arterbury's testimony admitting the opposite.

### b. Plaintiffs failed to meet the burden to prove it is entitled to convoyed sales.

A reasonable jury would not have a legally sufficient evidentiary basis to find for Plaintiffs on the issue of convoyed sales, which permits Plaintiffs to recover OSI's sales for products other than the OSI Vortex Sand Shield that are functionally related to it.  FED. R. CIV. P. 50(a).  Plaintiffs have the burden to prove the functional relationship necessary to receive damages resulting from alleged convoyed sales.  *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1550 (Fed. Cir. 1995) (liability does not "include items that have essentially no functional relationship to the patented invention and that may have been sold with an infringing device only as a matter of convenience or business advantage.").

Plaintiffs understand they do not have sufficient evidence on this point, as they did all they could to avoid the terms "convoyed" sales.[2]  Plaintiffs made this strategic choice, because they cannot prove the sales at issue were convoyed sales.  Indeed, Plaintiffs called the following live witnesses in their case and chief:  C. Bert Frost, Roy Arterbury, Delwin Cobb, and Dr. Donald

---

[2] Plaintiffs repeatedly referred to sales of other products as "complementary sales."

House. In Plaintiffs' case in chief, they did not elicit testimony proving that the sales for which Plaintiffs seek damages were convoyed sales. Specifically, Plaintiffs did not include, either through testimony or exhibits, evidence proving that the sold parts for which it seeks damages are considered a functional unit or are functionally related to the patented product. *See Warsaw Orthopedic, Inc. v. NuVaise, Inc.*, 778 F.3d 1365, 1375 (Fed. Cir. 2015); *see also American Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 168 (Fed. Cir. 2008). And Dr. House's calculation of damages assumed every product on every invoice was a convoyed sale without any evidentiary support. Rather, Dr. House said all could be included because it was convenient for customers to buy these items together, which is directly contrary to the legal standard set forth in *American Seating*, which prohibits the inclusion of convenience sales at convoyed sales.

### c. Plaintiffs fail to disprove non-infringing alternatives.

A reasonable jury would not have a legally sufficient evidentiary basis to find for Plaintiffs on the issue of lost profits because they have failed to disprove non-infringing alternatives. FED. R. CIV. P. 50(a). To recover lost profits, Plaintiffs are required to prove the absence of a non-infringing alternative under the second *Panduit* factor. *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1285-86 (Fed. Cir. 2017). "Damages under *Panduit* are not easy to prove" and the "second factor, absence of acceptable non-infringing alternatives, often proves the most difficult obstacle for patent holders." *Mentor Graphics*, 851 F.3d at 1285. Under that factor, "if there is a non-infringing alternative which any given purchaser would have found acceptable and bought, then the patentee cannot obtain lost profits for that particular sale." *Id*. at 1286. "[T]his determination is made on a customer-by-customer basis. For this reason, it is quite common to see damage awards where ... the patentee proves entitlement to lost profits for some of its sales, but not others." *Id*.

To prove that there are no acceptable non-infringing substitutes, the patent owner must show either that (1) the purchasers in the marketplace generally were willing to buy the patented product for its advantages, or (2) the specific purchasers of the infringing product purchased on that basis. *Standard Havens Prods. v. Gencor Industries, Inc.*, 953 F.2d 1360, 1373 (Fed. Cir. 1992); *see Apple, Inc. v. Samsung Elecs. Co.*, No. 11-cv-01846-LHK, 2013 WL 5958178, at *2 (N.D. Cal. Nov. 7, 2013) ("a noninfringing alternative need not have the patented feature in order to be deemed 'acceptable'").

During the testimony of C. Bert Frost and Roy Arterbury, the witnesses identified non-infringing alternatives such as Multilift, Spirit, gravel packing, and the OSI screen product. Further, there was no evidence that the wear structure had any importance in the marketplace. Accordingly, Plaintiffs have failed to meet this element of the *Panduit* test and, therefore, cannot recover lost profits.

Further, Dr. House admits that he failed to complete any determination on a customer-by-customer basis as to whether any non-infringing alternative would have been acceptable to that customer. *See Mentor Graphics*, 851 F.3d at 1285. This testimony was required to satisfy the second factor of the *Panduit* test, but Dr. House's testimony in addition to the other testimony in Plaintiffs' case-in-chief fails to support this factor.

### d.  There is no 1:1 correlation of lost sales.

A reasonable jury would not have a legally sufficient evidentiary basis to find that 100% of OSI's sales identified in Plaintiffs' Exhibit 36 would have resulted in a sale by Cavins. In other words, there is no legally sufficient evidentiary basis that there would be a 1:1 correlation of sales by OSI to Cavins. FED. R. CIV. P. 50(a). At trial, Dr. House testified that 100% of OSI sales would have resulted in a sale by Cavins. This testimony directly contradicts Mr. Arterbury's testimony

that a 1:1 correlation cannot be assumed. Not only is a bare assertion that Cavins would have realized 100% of Defendant's sales impermissible, it is especially egregious because Dr. House is assuming each Cavins sale would have been, on average, 40% higher than each of Defendant's sales. *See e.g., Comair Rotron, Inc. v. Nippon Densan Corp.*, 49 F.3d 1535, 1540 (Fed. Cir. 1995) (stating that "if the products are not sufficiently similar—in terms of price, product characteristics, and marketing channels—to compete for the same customers, the infringer's customers will not necessarily transfer their demand to the patentee's product in the absence of the infringing product").

But, there is no reliable factual basis for Dr. House's assumptions that Mr. Arterbury's profitability numbers are reliable or that 100% of OSI's sales would have gone to Cavins. The analytical gap between the data and the opinion amounts to unsupported speculation based on little more than Dr. House's *ipse dixit*. In fact, Plaintiff Arterbury's testimony directly contradicts House's opinion.

Further, Mr. Arterbury acknowledged in his witness testimony that he couldn't confirm the accuracy of the "lost sales," later stating that "I determined the numbers knowing they're not exact." Mr. Arterbury's admission of his own data's inaccuracy, coupled with his admission that his company does not even sell some of the products sold by OSI, and that he wouldn't have made 100% of the sales that OSI made, undermines any argument relating to the 1:1 correlation for lost sales.

> **e. Arterbury prepared improper data and analysis on lost sales and Dr. House relied on this data and analysis.**

Before presenting a damages number to the jury, the patentee must establish that its calculation is based on reliable methodology and concrete facts. *See, e.g., Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011). Mr. Arterbury admitted during his

testimony that he was not a CPA and that "you wouldn't want me doing your taxes." Further, Arterbury admitted he was not an expert in gross profits in infringement. Dr. House admits that he did not analyze the price, costs, or profit of the numbers he relied on. Instead, he relied improperly relied on the data and analysis non-expert Mr. Arterbury prepared with respect to lost sales.

> C.  **A judgment as a matter of law is appropriate as to Plaintiffs' contention regarding Cavins' role as an exclusive licensee.**

After the close of evidence, Plaintiffs have failed to proffer legally sufficient evidence such that a reasonable jury could not find that Cavins was an exclusive licensee in this case. A non-exclusive licensee is a licensee who is authorized to "make, use, and sell the patented product" but lacks the critical right to exclude others from also making, using, and selling the patented product. *Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*, 288 Fed. Appx. 697 (Fed. Cir. 2008); *Sicom Systems, Ltd. v. Agilent Technologies, Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005) ("A nonexclusive license confers no constitutional standing on the licensee to bring suit or even to join a suit with the patentee because a nonexclusive licensee suffers no legal injury from infringement.").

To determine whether a licensee is exclusive or not, the Court must ascertain the intent of the parties by reviewing the terms of the agreement and the substance of the grant. *Ortho Pharma. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1033-34 (Fed. Cir. 1995). The parties cannot create an exclusive license simply by calling the agreement "exclusive" – the substance of the agreement itself must reflect that the parties intended the agreement to be exclusive. *See id*. at 1032. The Court can determine that a licensee is an exclusive licensee only when the patentees have promised, either expressly or impliedly, that "others shall be excluded from practicing the invention" within the scope covered by the license. *Textile Productions, Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir. 1998). Therefore, if a party has not received a promise of exclusivity under the patent,

it cannot have co-plaintiff standing in an infringement action. *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1552 (Fed. Cir. 1995). A license arrangement is not exclusive merely because the patentee happened to grant only one license. *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 956 (Fed. Cir. 2006) (licensee lacked standing because its "right to practice the patent was 'exclusive' only in the sense that [it] was the only licensee of the ... patent at the time").

Cavins' relationship with Mr. Arterbury and Mr. Cobb arose from a "gentleman's agreement," which was unwritten, contained amorphous terms, and allegedly reached years before the '081 patent application was filed. Moreover, Plaintiff Arterbury's testimony proves there was no exclusive license because he admitted Cobb manufactured products covered by the '018 patent after reaching the alleged exclusivity agreement. Clearly, the alleged license was not exclusive because Cobb was permitted to practice the patent, without any proof of obtaining permission from Cavins beforehand.[3] The "agreement" was discussed between Mr. Arterbury and Mr. Cobb in passing decades ago and was never memorialized in a writing. This hardly constitutes an exclusive license agreement under the law. *See Spine Solutions v. Medtronic Sofamor Danek USA*, 620 F. 3d 1305, 1318 (Fed. Cir. 2010), *abrogated on other grounds by, Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923 (2016). There mere happenstance that Cavins held a license is not sufficient to establish that it is an exclusive licensee.

## PRAYER

Defendant Odessa Separator, Inc. respectfully requests the Court grant this Motion for Judgment as a Matter of Law and issue a final judgment disposing of all claims and all parties in this lawsuit and issue a take-nothing judgment against Plaintiffs Roy Arterbury, Delwin Cobb, and Cavins Corporation and request that Defendant be granted all such other and further relief, both

---

[3] Plaintiffs also presented no evidence that Cavins provided a license to the machine shop that manufactured products protected by the '081 patent.

special and general, at law and in equity, to which it may have shown itself justly entitled to receive.

Dated:  February 27, 2019.	Respectfully submitted,


By: */s/ Jeffrey A. Tinker*
   Jeffrey A. Tinker
   State Bar No. 24060733
   jtinker@bellnunnally.com
   Jeffrey S. Lowenstein
   State Bar No. 24007574
   jlowenstein@bellnunnally.com
   Brent A. Turman
   State Bar No. 24077506
   bturman@bellnunnally.com
   Saba F. Syed
   State Bar No. 24088497
   ssyed@bellnunnally.com

**BELL NUNNALLY & MARTIN LLP**
2323 Ross Avenue, Suite 1900
Dallas, Texas   75201
Telephone:  (214) 740-1400
Facsimile:  (214) 740-1499

**ATTORNEYS FOR DEFENDANT**


## CERTIFICATE OF SERVICE

 I certify that a copy of this document was forwarded to the counsel of record through the Court's ECF system on February 27, 2019.

    */s/ Jeffrey A. Tinker*
     Jeffrey A. Tinker


4358906_1.docx / 10688.2